# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYAN L. REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | 8:14CV65 |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | MEMORANDUM AND ORDER |
| Commissioner of Social Security, and ) | |
| U.S. ATTORNEY GENERAL ERIC ) | |
| H. HOLDER, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Ryan Reynolds claims in this Social Security appeal that the Commissioner's decision to deny him Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), and Supplemental Security Income under Title XVI of the Act is contrary to law and not supported by substantial evidence. For the reasons explained below, the Commissioner's decision will be reversed and remanded.

## BACKGROUND

Plaintiff applied for benefits on March 17, 2009. Plaintiff's applications were denied initially and on reconsideration. Plaintiff appealed the denial to an administrative law judge ("ALJ"). Following an administrative hearing, the ALJ issued an unfavorable decision on June 9, 2011, concluding that Plaintiff was not "disabled" within the meaning of the Act. (Tr. 122.)

Plaintiff requested that the Appeals Council of the Social Security Administration ("Appeals Council") review the ALJ's decision. On January 26, 2012, the Appeals Council remanded Plaintiff's case to the ALJ for reconsideration. (Tr. 140.) In doing so, the Appeals Council noted, among other things, that "the administrative record reveals evidence of a diagnosis and treatment for . . . an immunodeficiency, and chronic fatigue syndrome . . . but

the decision does not discuss or make a severity finding for these conditions . . . Further consideration of the alleged impairments is necessary." (*Id*.) The Appeals Council instructed the ALJ to do the following on remand:

> (1) Correct the claimant's date last insured and consider the evidence during the relevant period at issue.
>
> (2) Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence . . . The additional evidence should include a consultative physical examination and medical source statements about what the claimant can still do despite his impairments.
>
> (3) Further, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments . . . Specifically, the medical expert should consider the effect that the combination of the claimant's impairments and symptoms has upon his ability to perform work activity.
>
> (4) Evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).
>
> (5) Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).  In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p and nonexamining source opinion in accordance with the provisions of 20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 416.912).  The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the

> claimant's treating sources.
>
> (6) Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms . . . and pertinent circuit case law and Social Security Ruling 96-7p.
>
> (7) Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p). In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 141-42.)

The ALJ held a second administrative hearing on September 13, 2012. Plaintiff, who was represented by attorney Paul Snyder, appeared and testified at the hearing. Robert Pelc, Ph.D, a psychological expert, and Jerry Gravatt, a vocational expert, also testified at the hearing.

The ALJ issued another unfavorable decision on September 24, 2012. (Tr. 10.) In his decision, the ALJ evaluated Plaintiff's disability claim using the "five-step" sequential analysis prescribed by the Social Security Regulations.[1]  *See* 20 C.F.R. §§ 404.1520 and

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

At the first step, the claimant must establish that he has not engaged in

416.920. In doing so, the ALJ found that Plaintiff had the severe impairments of Chronic Otitis Media, chronic pain from a musculoskeletal condition, Hashimoto's Disease, and Depression. Immediately below this finding, the decision noted that Plaintiff "alleged that he was disabled due to musculoskeletal disorders, immunity disorders, and chronic fS [sic]." (Tr. 13.) The ALJ formulated Plaintiff's residual functional capacity ("RFC")[2] as follows:

> [T]he claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk (with normal breaks) for at least 2 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) was unlimited, other than as shown for lift and/or carry; could occasionally climb ramps/stairs and ladders/ropes/scaffolds, and occasionally balance, stoop, kneel, crouch and craw [sic]; had no manipulative, visual, or communicative limitations, and should avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards (machinery, heights, etc.); able to perform tasks of at least three step instructions, and able to tolerate occasional to frequent interaction with public, supervisors, and co-workers; and moderate limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting.

---

substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (citations omitted).

[2] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)).

(Tr. 16.) The ALJ determined that, given Plaintiff's RFC, he was unable to perform his past relevant work. However, the ALJ found that there was other work Plaintiff could perform. Therefore, the ALJ determined that Plaintiff was not entitled to benefits.

Following the issuance of the ALJ's second decision, Plaintiff again requested review of the ALJ's decision by the Appeals Council. On January 9, 2014, the Appeals Council denied Plaintiff's request for further review. (Tr. 1.) Thus, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* at 960-61 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence exists for a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

On appeal, Plaintiff claims that Defendant's decision is not based upon substantial evidence on the record as a whole. Plaintiff maintains that the ALJ failed to follow the Appeals Council's instructions on remand. Plaintiff further asserts that the ALJ erred in his determination of Plaintiff's RFC by improperly rejecting the opinions of Plaintiff's treating physician, Dr. John Ruffing ("Dr. Ruffing"), and Plaintiff's examining physician, Dr. Daniel Harkins ("Dr. Harkins"). Finally, Plaintiff claims that the ALJ erred by improperly finding his subjective complaints not to be credible. Plaintiff asks that this matter be reversed and remanded for further proceedings. In doing so, Plaintiff requests that the ALJ be directed on to apply SSR 12-2p and SSR 14-1p in evaluating his complaints of fibromyalgia and chronic fatigue syndrome. Having considered each of Plaintiff's arguments, the Court finds that remand is appropriate.

Plaintiff first argues that the ALJ failed to follow the Appeals Council's remand instructions to obtain a consultative medical examination and to evaluate Plaintiff's alleged impairments of chronic fatigue syndrome and immunodeficiency. (Tr. 140.). Plaintiff also claims that the ALJ also should have evaluated his fibromyalgia. According to Plaintiff, because the ALJ did not consider the full effects of all of his impairments in combination, the subsequent findings in the five-step sequential evaluation process are flawed.

Plaintiff correctly points out that in its remand order, the Appeals Council determined that further evaluation of Plaintiff's alleged immunodeficiency and chronic fatigue syndrome was necessary. (*Id*.) In order to resolve this insufficiency, the Appeals Council directed the ALJ to further develop the administrative record by obtaining additional evidence concerning Plaintiff's impairments. (Tr. 141.) The Appeals Council stated that this additional evidence "should include a consultative physical examination and medical source statements about what the claimant can still do despite his impairments." (Tr. 141-42.)

In his attempt to further develop the record on remand, the ALJ did not personally obtain a consultative medical examination. Rather, the ALJ sent interrogatories to Dr. Anne Winkler ("Dr. Winkler"), a non-treating, non-examining physician. In her responses dated June 13, 2012, Dr. Winkler indicated that the record contained "sufficient evidence (based on medically acceptable clinical and laboratory diagnostic techniques)" to enable her to evaluate Plaintiff's physical condition. (Tr. 903.) Dr. Winkler opined that Plaintiff could frequently lift and carry up to 50 pounds; sit, stand, and walk a total of 8 hours out of the work day, 4 hours each at a time. (Tr. 905-06.) Dr. Winkler further stated that there was "no objective evidence to support much in the way of physical limits. [Plaintiff] has normal MRI, no musculoskeletal exam findings and only complaints of pain." (Tr. 906.)

Dr. Winkler's interrogatories were not completely clear as to what medical records she reviewed in reaching her conclusions, however. On this basis, Plaintiff's attorney, Paul Snyder, objected to Dr. Winkler's interrogatories as lacking foundation. (Tr. 458-59.) The ALJ overruled the objection, but following the hearing, an unsigned exhibit dated September 13, 2012 from an unidentified individual was apparently admitted into the record. The exhibit states: "It is my normal practice to submit all medical records when requesting a

6

medical expert complete an interrogatory. It is my knowledge, information and belief that all records were submitted to Dr. Anne Winkler, MD." (Tr. 462.)

Prior to the second administrative hearing, Plaintiff independently obtained a consultative medical examination with Dr. Daniel Harkins ("Dr. Harkins"). Dr. Harkins conducted a two-hour examination of Plaintiff. (Tr. 895.) Dr. Harkins opined that Plaintiff is severely limited in his ability to work because of a multitude of physical problems. (Tr. 900.) Dr. Harkins opined that Plaintiff suffers from chronic fatigue syndrome, as well as musculoskeletal disorders. (Tr. 900-01.) Dr. Harkins did not submit any notes from his examination of Plaintiff, however.

In his second written decision, the ALJ gave "very little" weight to the opinion of Dr. Ruffling, Plaintiff's treating physician. (Tr. 26.) He also gave no weight to Dr. Harkins's assessment, noting: "It is incredulous to believe that there would be no notes in existence from a two-hour medical consultative examination." (Tr. 24.) The ALJ gave substantial weight to Dr. Winkler's opinion. (Tr. 26.)

The Court finds that the ALJ failed to comply with the Appeals Council's directives and did not fully develop the record in this case. *See Snead v. Barnhart, 360 F.3d 834, 839 (8th Cir. 2004)* ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.") It is undisputed that the ALJ did not personally obtain a consultative physical examination. Although Plaintiff did, apparently of his own volition, obtain such an exam, the ALJ discredited it, seeming in part due to the absence of examination notes. Rather than attempt to cure this deficiency by contacting Dr. Harkins to see whether such notes actually exist, the ALJ simply stated his disbelief that there were no interview notes in existence. The ALJ also did not attempt to obtain a second consultative exam, but instead decided to rely on non-examining physicians in reaching his conclusions.

Additionally, it is unclear which medical records Dr. Winkler examined in reaching her conclusions. Given the ALJ's substantial reliance on Dr. Winkler's opinion, it was clearly important to make sure that Dr. Winkler considered all necessary medical evidence,

especially in light of the ALJ's assignment of little to no weight on the examining physicians' opinions. See *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (stating that the opinions of non-treating, non-examining physicians "do not normally constitute substantial evidence on the record as a whole."). There is no information regarding what medical evidence Dr. Winkler actually reviewed in this case, nor is there any indication that Dr. Winkler was asked for this information. Although the record contains a note from an unidentified individual, which was apparently submitted after the second administrative hearing, stating that it is the normal practice to submit all medical records to examining physicians for their review, this document alone does not support the conclusion that Dr. Winkler examined all necessary medical records in reaching her opinion.

Given the ALJ's failure to comply with the Appeals Council's order to complete the administrative record by obtaining additional evidence concerning Plaintiff's alleged impairments and the severity of those impairments, which was to include, among other things, a consultative medical exam, this matter will be reversed and remanded for further proceedings. See *Vires v. Colvin*, No. 1:11CV212, 2013 WL 1408641, *15 (E.D. Mo. Apr. 8, 2013) (finding remand appropriate and necessary where the ALJ failed to comply with the Appeals Council's directives). The Court finds that "[b]ecause the record was incomplete with respect to such impairments, the ALJ's resulting credibility and RFC determinations were not supported by substantial evidence on the record as a whole." *Vires*, 2013 WL 1408641 at *16.

## CONCLUSION

The Court finds that this matter must be remanded for further proceedings to allow for further development of the record with respect to Plaintiff's alleged impairments. In particular, a consultative medical examination must be obtained. Also, Dr. Harkins and Dr. Winkler should be contacted in an effort to clarify their opinions and supply any information absent from the record. The Court will leave it to the Commissioner to determine the proper social security regulations under which to evaluate Plaintiff's alleged impairments.

Accordingly,

**IT IS ORDERED** that judgment shall be entered by separate document providing that the decision of the Commissioner is reversed and this case is remanded to the Commissioner for further proceedings consistent with this opinion.

**DATED January 9, 2015.**

                            **BY THE COURT:**

                            **S/ F.A. Gossett**
                            **United States Magistrate Judge**